(No. 12091.—Reversed in part and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* GEORGE PASFIELD, JR., Exr. *et al.* Appellees.

*Opinion filed June 20, 1918—Rehearing denied October 3, 1918.*

1. INHERITANCE TAX—*expenses of administration must be deducted before computing the tax.* All debts and claims against a decedent's estate and expenses of administration must first be deducted from the gross value of the estate transferred before the State inheritance tax shall be computed, and the expenses of executors in successfully defending a suit to contest the will are a part of the expenses of administration.

2. SAME—*Federal estate tax must be deducted before computing State tax.* Under the Federal Estate Tax act of 1916 the Federal tax is a charge or expense against the estate of the decedent rather than against the share of the legatees or distributees, and as a part of the expenses of administration such tax should be deducted before computing the State Inheritance tax.

3. SAME—*the Federal estate tax is not a direct tax on property.* The Federal estate tax of 1916 is not a direct tax on property of the decedent nor a direct tax in any sense but is a tax on the transfer of the property involved, and it is a duty of the same character as the old English probate duty.

4. SAME—*fees of guardian ad litem cannot be paid out of tax fund.* The Illinois Inheritance Tax act, though very specific as to what charges and fees are payable out of the tax fund, contains no provision authorizing the fees of a guardian *ad litem* for minor heirs to be payable out of the tax fund in the hands of the county treasurer, and the county court is not authorized to assess such fees against the fund.

5. SAME—*fees of guardian ad litem where trust is involved are payable out of the trust fund.* The compensation of a guardian *ad litem* in a case where a trust fund is involved is to be paid from the trust fund in the hands of the trustee, executor or administrator.

APPEAL from the County Court of Sangamon county; the Hon. JOHN B. WEAVER, Judge, presiding.

EDWARD J. BRUNDAGE, Attorney General, FLOYD E. BRITTON, and WALTER M. PROVINE, for the People.

JAMES H. MATHENY, and B. L. CATRON, guardian *ad litem,* for appellees.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

George Pasfield, a resident of Sangamon county, Illinois, died testate December 11, 1916. His will was thereafter admitted to probate in said county, and George Pasfield, Jr., was appointed executor and trustee of the trust created in the will. On December 30, 1916, the county judge appointed an appraiser to appraise the property of the deceased under the State Inheritance Tax law. B. L. Catron was appointed guardian *ad litem* for all minor heirs and beneficiaries under the provisions of section 27 of that act. The appraiser reported that the gross value of the decedent's property transferred, within the meaning of the Inheritance Tax law, was $1,649,967.88, and that the amount of $73,721.14 should be deducted on account of claims against the estate and the costs of administration, exclusive of any amount which said estate might be liable to pay to the Federal government as a Federal estate tax. The appraiser further reported and recommended that by virtue of the will of the decedent an undivided one-third of the net estate should be distributed for the purposes of the tax to each of the three classes of heirs and beneficiaries, and by reason of contingent and defeasible interests in each class only one exemption of $20,000 should be allowed to each class, and that a tax be assessed against each of the three classes in the amount of $10,108.31, making a total of taxes recommended by the appraiser of $30,324.93. The county judge approved the report, with the exception that he deducted the Federal estate tax from the gross value of the decedent's property transferred, in addition to the amount deducted by the appraiser, before computing the amount of inheritance tax due the State. The reduction thus made by

the county judge left the total State inheritance tax as fixed by him at $28,349.82, or $1975.11 less than the amount recommended by the appraiser. In his order the county judge further fixed the guardian *ad litem's* fees at the sum of $750, and ordered that the same be paid by the county treasurer out of any money in his hands on account of said tax. The People, by the Attorney General, appealed the cause to the county court. The case was thereafter heard at the December term of that court. It was stipulated in the county court that if the Federal estate tax be a proper deduction to be made the tax as fixed by the county judge was correct, and if not a proper deduction, that the taxes as recommended by the appraiser are correct. It was further stipulated that the Federal estate tax of $98,755.35 had been paid to the Federal government by the executor and trustee. No stipulation was made as to the fee of the guardian *ad litem*. Evidence was heard showing that the usual and customary fee for such services as were rendered by the guardian *ad litem* would be $750. The county court affirmed the order of the county judge, and the People have perfected an appeal to this court.

Two questions are raised by this appeal: (1) Whether or not the amount paid the United States as estate tax and imposed by virtue of the act of September 8, 1916, be first deducted from the appraised value before the two per cent State inheritance tax is computed; (2) whether or not it is proper for the county court to allow a guardian *ad litem* fee for the guardian *ad litem* of the infant heirs or legatees whose interests are subject to an inheritance tax, to be paid out of the amount ordered paid to the State as inheritance tax.

In construing the Inheritance Tax law of this State this court has held that all debts and claims against the deceased's estate and the expenses of administration must first be deducted from the gross value of the decedent's property transferred, within the meaning of that act, before the State

inheritance tax shall be computed, and that an expense incurred by the executors in successfully defending a suit to contest the will is a part of the expense of administration. (*Connell* v. *Crosby,* 210 Ill. 380; *People* v. *Tatge, 267* id. 634.) Section 1 of the State Inheritance Tax law provides that the tax shall be imposed upon the beneficial interest which passes to the persons therein named, and the rate is fixed on the $100 "of the clear market value of such property received by each person," etc. It must be conceded that the beneficial interest which passes under the will is only what remains after the payment of the indebtedness of the estate and the expenses of administration, as was expressly held in *In re Estate of Graves,* 242 Ill. 212, and that it is only the excess over such indebtedness and expenses that is subject to an inheritance tax. If the Federal estate tax paid by the executor is to be properly considered as a debt or an expense of administration of the estate, there can be no question but that the deduction of that tax was properly made by the county court.

Section 201 of the act of September 8, 1916, known as the Federal Estate Tax act, provides, among other things, that "a tax is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this act, whether a resident or non-resident of the United States." (6 U. S. Comp. Stat. Ann. 1916, p. 7364.) Where the net estate of such a decedent exceeds $1,000,000 and does not exceed $2,000,000 that statute fixes such tax at six per centum of the amount of such net estate. Section 207 of the said act provides that the executor shall pay the tax to the collector or deputy collector. This statute differs somewhat from the Federal statute of 1898, as the latter act levied an excise or duty on the distributive share of each legatee or distributee, while the former levies a duty, as above shown, on the entire net estate before any distribution is made to the legatees or distributees. The duty levied by the Federal act of September 8, 1916, resembles very

closely the old English probate duty established in 1694
and the probate duty of 1862 and 1864 levied by the acts
of Congress of the United States. The old probate duty
was treated in England as an expense of administration to
be deducted out of the residue of the estate. (*Knowlton*
v. *Moore,* 20 Sup. Ct. Rep. 747.) The Federal act of Sep-
tember 8, 1916, levies a duty against the value of the entire
mass of the decedent's property, real or personal, tangible
or intangible, wherever situated, after deducting for funeral
expenses, administration expenses, claims against the estate
and the other deductions mentioned in said act, and makes
the same a lien against the property in whosesoever's hands
the same may pass by transfer or otherwise. As the duty
is made payable by the executor or administrator to the col-
lector or deputy collector by the express provisions of the
statute, the duty is an expense or a charge against the estate
of the decedent and not an express charge against the shares
of the legatees or distributees of the decedent. The lega-
tees and distributees cannot in any sense be held to have "re-
ceived" any part of the duty that is paid to the government
by the executor or trustee or administrator as such estate
tax, and there is no language in the act that will permit a
construction that the duty is levied upon each share of the
legatees or distributees of the decedent, as was given the
Federal act of 1898 by the court in *Knowlton* v. *Moore,*
*supra.* The Federal Estate Tax act of September 8, 1916,
necessarily operated to lessen, by the amount of such tax,
the clear value of the beneficial interest which passed to the
heirs and legatees in the instant case and prevented their
receiving any part of that tax, and the ruling of the county
court that the same should be deducted before computing
the State tax was correct. Practically the same construction
was placed upon said Federal act by the Supreme Court of
Minnesota in *State* v. *Probate Court of Hennepin County,*
166 N. W. Rep. 125, where the same question was involved
under a statute providing that the State tax shall be a speci-

fied percentum of "the clear value of the beneficial interest in the property which passes to the beneficiaries designated by the will or statute."

Our attention has been called to the case of *In re Gihon's Estate,* 169 N. Y. 443, where it was held that the Federal tax of 1898 should not be deducted from the value of decedent's property before computing the State tax. We do not regard this case as applicable to the instant case because of the difference between the law of 1898 and the Federal act of September, 1916. The lower court in that case held that the Federal taxes were primarily payable out of the estate in the hands of the administering officer, and that the law contemplated that the legatees and distributees should not receive the decedent's estate until the Federal tax was paid. In answering that argument the New York court of appeals said: "In our judgment the vital error of this argument lies in the assumption that the 'taxes are primarily payable out of the estate.' The Federal tax is exactly of the same nature as the State tax,—a tax not on property but on succession; that is to say, a tax on the legacy or the privilege of succeeding to property."

Appellees have also called our attention to the fact that the Supreme Court of Massachusetts apparently disagreed with the New York court of appeals and held that the Federal tax of 1898 was to be deducted before the State tax of Massachusetts should be computed. (*Hooper* v. *Shaw,* 176 Mass. 190.) As the holding of the New York court is not applicable here we do not deem further comment on these conflicting decisions necessary.

It is suggested by appellant that the Federal act of September 8, 1916, is of doubtful constitutionality because the tax appears to be a direct tax on the estate as such, as no account is taken of the beneficiaries, and also because there cannot be such a thing as an exercise of a *right* to transmit, which is subject to a tax by the Federal government, etc. The State also expressly disclaims any endeavor to prove

the law unconstitutional or make a determined attack upon its constitutionality. It is suggested, however, that if the law is unconstitutional the amount paid to the Federal government should not have been deducted by the county court. If the constitutionality of the act is to be considered as raised and proper under the stipulations in this case, we are clearly of the opinion that the act is not unconstitutional upon the grounds pointed out by appellant. The Federal tax of 1916 is not a direct tax on property of the decedent and is not a direct tax in any sense. As has already been said, the tax is a duty of the same character as the old English probate duty and is not invalid upon any of the grounds urged by appellant or upon any one of the several grounds raised in behalf of the party complaining in the case of *Knowlton* v. *Moore, supra,* as clearly appears by the decision of the Supreme Court of the United States in that case.

After thoroughly considering the briefs of counsel and the Inheritance Tax statute we are of the opinion that the county court incorrectly ruled that the guardian *ad litem's* fees in this case should be paid out of the tax fund in the hands of the county treasurer, which was found by the court to be the amount of inheritance tax due the State. The section of the statute authorizing the appointment of the guardian *ad litem* merely provides that if it appears at any stage of an inheritance tax proceeding that any person known to be interested therein is an infant or person under disability, the county judge may appoint a special guardian for such infant or person under disability. The act nowhere specifically provides in what manner or by whom the guardian *ad litem* is to be paid. The act does specifically provide that the appraiser's fees and necessary traveling expenses and disbursements, including witness fees paid by him, shall be paid by the county treasurer out of any funds he may have in his hands on account of the inheritance tax collected in the appraisement. It also provides that the

clerk's fees shall be paid by the county treasurer out of any moneys in his hands on account of said tax. Section 21 of the act allows the county treasurer of each county two per cent on all taxes collected by the State, and by the act he is to retain it from any such tax funds collected by him. It is, however, specifically provided by section 11 of the act that any person or persons, including the Attorney General, dissatisfied with the appraisement or assessment, may appeal therefrom to the county court of the proper county within sixty days after the making and filing of said assessment order on paying or giving to the county judge security to pay all costs, together with whatever taxes shall be fixed by the court, with the proviso that no bond or security shall be required of the Attorney General. The act further provides that the fees and costs in all such cases shall be the same as are allowed by law in cases at law in the county court. It clearly appears from the provisions of the statute that it does not authorize the county court, on such appeal, to assess the costs against the people. Section 17 of our Costs statute provides that if verdict shall pass against the people in any suit brought on their behalf the defendant shall not recover costs. (Hurd's Stat. 1917, p. 782.) In the absence of a special provision in the act authorizing the court to order the costs or the fees of the guardian *ad litem* to be payable out of the particular tax fund recovered against the estate the court was not authorized to assess such costs or fees against the fund. The statute is very specific as to just what charges and fees are payable out of the tax fund, and had the legislature intended that the guardian *ad litem* fee should be made so payable it would certainly have appeared in the act by specific language. To hold to the contrary would be a holding expressly against the declared policy of the legislature by the general act on costs.

The services of the guardian *ad litem* were rendered in this case for the benefit of the estate. By reason of the court's decision the entire estate of the decedent that passed

to the beneficiaries was enlarged and the amount claimed by the State was lessened. The policy of the law in this jurisdiction in regard to the compensation of a guardian *ad litem* in a case where a trust fund is involved is that his compensation is to be paid from the trust fund in the hands of the trustee, executor or administrator. (*Binns* v. *LaForge,* 191 Ill. 598.) The guardian *ad litem* in this case was entitled to be paid his fees, and the order of the court should have been that the fee be paid out of the general funds of the estate after the inheritance tax was first deducted.

The judgment of the county court is affirmed as to the deduction of the Federal estate tax before computing the State inheritance tax and reversed as to the order in regard to the guardian *ad litem* fee, and the cause is remanded, with directions to enter a judgment in accordance with the views herein expressed.

*Reversed in part and remanded, with directions.*